GARNETT & ALLEN PAPER COMPANY, Appel-
lant, v. MIDLAND PUBLISHING COMPANY,
Respondent.

St. Louis Court of Appeals. Submitted on Briefs March 8, 1911.
Opinion Filed April 4, 1911.

1. APPELLATE PRACTICE: Matters Reviewable. A ruling by
the trial court on a motion, which is not assigned as error, will
not be noticed on appeal.

2. ————: ————: Motion for Order Nunc Pro Tunc. A motion
for an order *nunc pro tunc* will not be noticed on appeal, where
it was submitted to the trial court without any evidence being
offered in support of it.

3. TRIAL PRACTICE: Motion to Arrest and to Set Aside Judg-
ment: Nature. A motion to arrest and set aside a judgment, di-
rected solely at alleged errors in the record proper, is a mo-
tion in arrest of judgment.

4. APPELLATE PRACTICE: Motion in Arrest of Judgment: Func-
tion: Trial Practice. A motion in arrest of judgment does not
reach matters of exception, but is directed solely at errors in
the record proper.

5. ————: Matters Reviewable: Overruling Motion to Make Defi-
nite and Certain: Necessity of Motion for New Trial. The
overruling of a motion to make a pleading more definite and
certain is not subject to review on appeal without a motion
for new trial and exception saved to adverse action thereon.

6. PLEADING: Exhibits: Considered on Demurrer: Appellate
Practice. Although, ordinarily, an exhibit is not to be consid-
ered as part of a pleading, nevertheless, under section 1832,
Revised Statutes 1909, an account attached to, and referred
to in, a pleading is to be considered as part of the record, in
passing on such pleading on demurrer.

7. **MONEY HAD AND RECEIVED: Pleading: Counterclaim: Sufficiency of.** A counterclaim, in an action for the purchase price of printing paper, averred that defendant· had paid plaintiff on purchases of printing paper certain sums of money, for which it was not indebted to plaintiff and which were paid "under a fraudulent mode of business or system practiced by plaintiff, and such sums of money were had and received by plaintiff to the use of defendant," and further averred that, under plaintiff's system, printing paper purchased was invoiced at weights in excess of the true weights, and, because of such excesses, overpayments were made by defendant, the dates of the invoices, the weights set forth and the true weights being shown by a statement · filed. *Held,* that the counterclaim did not sound in tort, but, divested of all surplusage, was an action for money had and received.

8. ———: **Waiving Tort.** Where, by virtue of overcharges, one pays money to another, to which the latter is not entitled, the tort may be waived and an action maintained on the implied contract for money had and received.

9. ———: **Pleading: Fraud and Deceit.** An averment in a counterclaim, seeking a recovery for money had and received, that a certain payment alleged to have been made was secured by plaintiff "under a fraudulent mode of business or system practiced by plaintiff" falls short of a charge of false representations, deceit and fraud, made with intent to deceive defendant.

10. ———: **Evidence: Fraud and Deceit.** In an action for money had and received, any evidence may be given, even of fraud, tending to establish the fact that defendant has obtained money or property, for which, *ex aequo et bono*, he should account, and he cannot defeat a recovery by pleading his own fraud as a defense.

11. ———: **Nature of Action: Pleading: Common Law and Code Requirements.** At common law, an action for money had and received was in assumpsit, and it was necessary to aver, but not to prove, a promise; but, under the code, which has abolished unnecessary allegations, the fiction of a promise is an unnecessary averment, as facts only are to be pleaded, and where one receives money to the use of another, the law imposes an obligation and implies a promise to repay.

12. ———: **Counterclaims: Subject-Matter: Same Transaction or Arising on Contract.** A counterclaim, in an action for the purchase price of printing paper, averred that defendant had paid plaintiff on purchases of printing paper certain sums of money, for which it was not indebted to plaintiff and which

were paid "under a fraudulent mode of business or system practiced by plaintiff, and such sums of money were had and received by plaintiff to the use of defendant," and further averred that, under plaintiff's system, printing paper purchased was invoiced at weights in excess of the true weights, and, because of such excesses, overpayments were made by defendant, the dates of the invoices, the weights set forth and the true weights being shown by a statement filed. The cause of action counted on in the counterclaim was averred to have been in existence at the time plaintiff commenced its action. *Held*, that the counterclaim could be sustained under the first subdivision of section 1807, Revised Statutes 1909, as arising out of the transaction set forth in the petition, or that it could be sustained under the second subdivision of that section, as an action arising on contract and existing at the commencement of plaintiff's action.

13. COUNTERCLAIMS: Liquidated Demand. It is not material that the real cause set out as a counterclaim should be a liquidated demand.

14. MONEY HAD AND RECEIVED: Pleading. A petition, in an action for money had and received, which charges no more than that defendant had and received certain sums of money mentioned and conforms to the statutory requirement by pleading the items of the account or having a statement setting out such items attached, fulfills the requirements of the statute as to pleading.

15. PLEADING: Indefiniteness: Remedy. Where a pleading is indefinite, the remedy is by motion to make it more definite, and not by demurrer.

16. MONEY HAD AND RECEIVED: Pleading: Demurrer: Questions Raised by. Where a counterclaim, seeking a recovery for money had and received by virtue of overcharges on goods purchased, avers that plaintiff is liable to defendant by reason of the latter having paid it sundry sums of money on such overcharges, which sums were had and received by plaintiff to the use of defendant, defendant could not, by demurrer to the counterclaim, raise the defense that the receipt and use of the goods and payment therefor, without objection, finally ended the matter and that the rule of *caveat emptor* applied.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

AFFIRMED.

*Crews & Cantwell* for appellant.

(1) The motion of plaintiff to make more definite and certain the counterclaim of defendant should undoubtedly have been sustained. Atterbury v. Powell, 29 Mo. 429; Mfg. Co. v. Saltzmann, 42 Mo. App. 85; Mac-Adam v. Scudder, 127 Mo. 345; Walker v. Ins. Co., 62 Mo. App. 209. (2) The cause of action attempted to be set up in the counterclaim has no connection whatever with the contract or transaction sued on in the petition. To be available as a counterclaim a contract must be alleged as it is only "a cause of action arising on contract" (unless arising out of subject-matter sued on) that is available as a counterclaim under the statute. No contract of warranty is alleged. Sec. 1807, R. S. 1909; Barnes v. McMullins, 78 Mo. 260 (p. 269). (3) No cause of action is stated. In the absence of an express warranty, or in the absence of an allegation of a trust relation or upon some special facts or circumstances other than the mere relation of vendor and vendee, the receipt and use of goods without objection, the payment of same without objection finally and forever ends the matter. Adams v. Helm, 55 Mo. 468; Tufts v. Morris, 87 Mo. App. 98; Steam Heating Co. v. Seigel, 60 Mo. App. 148; Tiedeman on Sales, 1891, sec. 117, p. 168; 24 Am. and Eng. Ency. of Law, p. 1092; Tiffany on Sales, sec. 103; Benjamin, Principles of Sales, p. 161; Barnard v. Kellogg, 10 Wallace (77 U. S.) 383; "Wheatley Case," Mansfield, Judge, year 1761; Crane Co. v. Collins, 93 N. Y. Supplement 174; Merriam Paper Co. v. N. Y. Mason, 108 N. Y. Supplement 1038; Cowles v. Michel, 5 N. Y. State Rep. 427; State ex rel. v. Stonestreet, 92 Mo. App. 214; Claflin v. McDonough, 33 Mo. 412.

*Frank K. Ryan* for respondent.

(1) There is nothing before the court in this case but the record proper. For appellant did not file any

motion for a new trial, and the motion in arrest of judgment to which it refers could only reach errors and defects on the face of the record, even if such motion had been embodied in a bill of exceptions, something which does not appear to have been done by what the appellant has filed as an abstract of the record herein. McCarty v. O'Brien, 134 Mo. 584; Pepperdine v. Bank, 100 Mo. App. 387; Sec. 2040, Revised Statutes 1909; Jefferson City v. Opel, 67 Mo. 394; Kennedy v. Siemers, 120 Mo. 74; Smith v. Baer, 166 Mo. 392; Martin v. Tobacco Co., 53 Mo. App. 16; Rhorer v. Brockhage, 15 Mo. App. 16; Green v. Supreme Lodge, 79 Mo. App. 179. (2)   Respondent's statement of cause of action on its counter-claim is in accord with Missouri decisions and the authorities generally as to sufficiency of statement in actions for money had and received.   Davis v. Krum, 12 Mo. App. 279; Tamm v. Kellogg, 49 Mo. 118; Richardson v. Drug Co., 92 Mo. App. 515; Clifford Banking Co. v. Donovan, 195 Mo. 262; People v. Tweed, 63 N. Y. 194; Yeater v. Hines, 24 Mo. App. 619; Bates on Pleading, p. 2175.   (3)   Appellant's counter-claim is a cause of action arising on contract within the meaning of the Missouri statute relating to counter-claims.  Green v. Conrad, 114 Mo. 651; Empire Transportation Co. v. Boggiano, 52 Mo. 295; Bliss on Code Pleading, note to sec. 153, 3d Ed.; Moses v. McFerlan, 2 Burr 1005, 1010; Richardson v. Drug Co., 92 Mo. App. 515.

REYNOLDS, P. J.—Plaintiff below, appellant here, on December 14, 1908, commenced action against defendant, the petition containing three counts, each count setting up sale and delivery of printing paper of different brands, the sales made at different dates. In the first count the amount claimed is $740.34, with interest at six per cent from the 15th of May, 1908; in the second count the amount claimed is $503.67, and interest at six per cent from the 15th day of June, 1908; in the third count the amount claimed is $181.47, and

interest at six per cent from the date of demand, 15th of July, 1908.

Admitting the incorporation of the parties, the answer is a general denial. Following this a counter-claim is set up which, in substance, averred that defendant, on purchases of printing paper from plaintiff between the 2d of January, 1905, and the 31st of March, 1908, had paid to plaintiff sundry sums of money for which it was not indebted to plaintiff "and which were paid to it under a fraudulent mode of business or system practiced by plaintiff, and such sums of money were had and received by said plaintiff to the use of defendant herein." It is further averred that under the system of plaintiff, the purchases of printing paper were uniformly invoiced at weights in excess of the true weights thereof and the amounts in money of overpayment by defendant, because of such excess in weights, were paid by plaintiff and received by defendant as aforesaid, the dates of invoices, the weights set forth in them and the true weights of said purchases being shown by a statement filed, the aggregate amount of said excess in weights charged to be 61,500 pounds, the total amount of overpayments alleged to be $2254.48, for which amount defendant demands judgment. The statement of account attached and referred to is dated December 31, 1907, and contains over 250 items.

At the February term of the circuit court plaintiff filed a motion to make the answer of defendant more definite and certain as to the counterclaim, it being charged that this part of the answer does not sufficiently acquaint the court or plaintiff with the ultimate facts upon which the defendant bases a legal claim for recovery, and that it is impossible to determine, from the counterclaim stated in the answer, whether the alleged facts arise out of the contracts or transactions set forth in the petition as the foundation of plaintiff's claim, or whether the counterclaim is connected with the subject of the action, or whether it arises in another cause of

action arising on contract and existing at the commencement of the action herein, and because it is impossible to determine from the averment in the counterclaim whether the defendant seeks a recovery upon contract or tort. At the April term of court this motion was overruled, it being stated in the abstract that plaintiff duly excepted, filing a term bill of exceptions. At this same April term, plaintiff filed a demurrer to the answer, the demurrer assigning for cause, first, that several causes of action have been improperly united in the counterclaim; second, because the alleged counterclaim does not state facts sufficient to constitute a cause of action. The demurrer coming on to be heard at that term, was overruled, and plaintiff, electing to stand on the demurrer, refused to plead further. Whereupon, and at that term, an order or judgment was entered substantially to the effect that plaintiff's demurrer to the counterclaim was overruled and it appearing to the court from the counterclaim that plaintiff is indebted to defendant on account of overpayments as herein stated in the sum of $2254.48, "and said plaintiff having filed herein this day declination to plead further, and to stand on said demurrer; it is, therefore, considered and adjudged by the court that final judgment be entered on said demurrer, and that the defendant recover of plaintiff the said sum of $2254.48, and also its costs herein expended, and have execution therefor." It is set out in the abstract that "to which ruling, order and judgment of the court the plaintiff at the time duly excepted." Beyond the above there is no statement that any exception was saved to this action, the term bill of exceptions before referred to as filed, as it is set out in the abstract, merely saving exception to the action of the court in overruling the motion to make more definite and certain. It does not appear that any motion was ever filed at any time to set this judgment aside for irregularity. It further appears by the abstract that on

November 9, 1909, that is to say, at the October term of the court, that being the second term occurring after the rendition of the above judgment, "said cause came on for trial, and after evidence had been introduced by plaintiff and defendant in support of the issues in said cause and upon the oral admission of defendant's counsel and the memorandum then signed by counsel," judgment is entered as follows: "Now at this day come again the parties hereto by their respective attorneys; come also again the jurors heretofore sworn and empanelled herein; thereupon, the further trial of this cause progressed and during the progress of said trial the parties hereto agree upon a settlement on plaintiff's cause of action, and file and present to the court their stipulation which is in words and figures as follows, to-wit: 'Judgment on first count for plaintiff, for $708; on second count for plaintiff, $396.20; on third count, $175.' Thereupon the court doth discharge the jury aforesaid from further consideration of this cause, and it appearing to the court that heretofore, to-wit on the 14th day of May, 1909, a demurrer to defendant's answer and counterclaim was overruled and that plaintiff elected to stand on said demurrer, and that judgment was rendered in favor of defendant on its counterclaim for $2254.48, it is ordered that final judgment be rendered herein in favor of defendant for $975.28, being the difference between the amount agreed upon by said parties on plaintiff's first, second and third counts of its petition and the amount heretofore found in favor of defendant on its counterclaim. Wherefore, it is considered and adjudged by the court that the defendant recover of the plaintiff the sum of $975.28, aforesaid, together with its costs herein expended and that execution issue therefor." At the same term and within two days after the rendition of this judgment as it is recited in the abstract, "the following motion for new trial and in arrest of judgment filed:

"Comes now the plaintiff in the above entitled cause and prays the court to arrest and set aside the judgment rendered herein on defendant's counterclaim, and for grounds thereof says:

"1st. That the demurrer to defendant's counterclaim should have been sustained.

"2d. That the counterclaim does not state facts sufficient to constitute cause of action.

"3d. That the counterclaim does not state facts sufficient to constitute cause of action as a counterclaim.

"4th. That the judgment on said counterclaim is against the law and should have been for the demurrant, said Garnett & Allen Paper Company."

This was overruled at the December term of the court, plaintiff excepting, and at that term filed its affidavit for appeal and bond for appeal to the St. Louis Court of Appeals, the appeal being granted. A month afterwards, but at the same term, plaintiff filed a motion to have certain *nunc pro tunc* entries made. It is not necessary to set these out, for two reasons: First, learned counsel for appellant assign no error in this court on the action of the trial court in overruling the motion; second, so far as appears in the abstract, the motion was submitted to the court without any evidence in support of it.

It is recited in the abstract that within the time granted by the court, a bill of exceptions was duly signed, filed and made a part of the record. Nothing resembling a bill of exceptions is in the abstract, beyond these recitals.

The assignments of error made in this court are three:

"1. The court erred in overruling the plaintiff's motion to make more definite and certain the counterclaim in the defendant's answer.

"2.   The court erred in overruling the demurrer to the counterclaim in defendant's answer.

"3.   The court erred in overruling the motion in arrest of judgment."

It will be observed by this recital of the abstract that no motion for new trial was ever filed. What is called the "motion for new trial and in arrest of judgment," is obviously a motion in arrest of judgment. It is directed solely at alleged errors in the record proper. Motions in arrest do not reach matters of exception. [McCarty v. O'Bryan, 137 Mo. 584, 38 S. W. 456.] They are directed solely at alleged errors in the record proper.

Without a motion for new trial and exception saved to adverse action thereon, the action of the court in overruling the motion to make the counterclaim more definite and certain is not subject to review by us, and the assignment of error on this by learned counsel for appellant cannot be sustained.   [Hays v. Foos, 223 Mo. 421, 122 S. W. 1038.]

The other assignments of error go to the record proper, that is to say, the petition, the answer, which contains the counterclaim and account filed with it, the demurrer and the judgment. Plaintiff, standing on the demurrer, of course interposed no reply.

We include in the record proper the account filed as an exhibit to the counterclaim. While ordinarily an exhibit is not to be considered as part of a pleading in passing on that pleading on demurrer, our statute (R. S. 1909, sec. 1832) specifically provides that an account attached to the pleading and referred to therein shall be a part of the record.

No attack is made before us on the form of the judgment entered in overruling the demurrer, nor to the action of the court in entering judgment assessing damages without an inquiry. The errors assigned, as we have seen, apart from that as to the overruling of the motion to make the petition more definite and certain, go to the counterclaim. Hence we in no manner con-

sider or pass upon or express any opinion upon any other matters.

The questions for determination here are: Does the counterclaim set up a cause of action? Will the averments in the counterclaim support the judgment?

One of the points made by the learned counsel for appellant as against the counterclaim is that the cause of action attempted to be set up sounds in tort and has no connection whatever with the contract or transaction counted on in the petition. Barnes v. McMullins, 78 Mo. 260, at pages 269, 274-75-76, is cited in support of this. Without setting out the facts in that case, it is sufficient to say that they bear no resemblance to those in the case at bar, and that decision is in no manner applicable to this case. This counterclaim does not sound in tort. Divested of all surplusage and unnecessary matter, the counterclaim is practically what under common law pleading would be denominated a common count for money had and received. The defendant, granting that it had, as plaintiff contends, an action in tort, waived the tort and sued as on the implied contract, doing this in form called, under common law pleading, a common count for money had and received. That the defendant had an undoubted right to waive the tort has been recognized time and again by the text-writers, by the decisions of our courts and by courts of other jurisdictions in which the code system of practice prevail. Judge Bliss, in his work on Code Pleading (3 Ed.), sec. 153, under the subdivision, "How the facts should be stated in treating a tort as a contract," or, as that learned author says, "to use the old phraseology, waive the tort and sue as upon contract—that is, sue in assumpsit," observes that while under the code there is no assumpsit or other common law form of pleading, the right to waive the tort and sue upon the contract is still recognized. In the note to this section 153 (foot-page 256), it is said that the phrase " 'waiving a tort,' means no more than that by treating the matter as a contract he

(the pleader) waives his right to pursue it as a tort, with the peculiar remedies, penalties, and consequences belonging to it in that character. He by no means waives the right to give evidence of the real transaction, and of its true character, for that would be to waive all remedy. The waiver of the tort, therefore, is simply a declaration that the party elects to treat the facts as establishing an implied contract, which he may enforce, and one which the defendant is estopped, by reason of his wrong, from denying." It is further said in this same footnote that "the fact that the petition of complaint contains allegations of fraudulent representations or deceit does not necessarily fix the character of the action as one sounding in tort. The determination of the question whether the action is for a tort or upon a contract depends upon the presence or absence in the pleadings of an allegation that the false representations and deceit and fraud were made with any intent to cheat or deceive."

In the case at bar the intent, gathered from the averments of the counterclaim and the attached account, to plead on the implied contract and not in tort is plainly manifest. The pleader has waived the tort, as he had a right to do. It is true that he avers that the payment was secured by plaintiff "under a fraudulent mode of business or system practiced by plaintiff," but this falls far short of a charge of false representations and deceit and fraud made with intent to deceive defendant. Under the common counts, any evidence may be given, even of fraud, going to establish the fact that defendant (here the plaintiff) has obtained money or property, for which, *ex aequo et bono,* defendant (here plaintiff) should account, and the defendant (here plaintiff) cannot defeat recovery by pleading his own fraud in defense. [Bliss, Code Plead., sec. 154.] At common law the action was in assumpsit, and it was necessary to aver, but not prove, a promise; the latter need not be proven, for the law implied it. Under the code abolishing unneces-

sary allegations, the fiction of a promise is an unnecessary averment. Facts are to be pleaded. When the defendant charges the plaintiff with having and receiving money to its use, the law imposes the obligation and implies the promise to repay. This matter of a petition or count on money had and received is so fully and lucidly covered by the decision of our Supreme Court in Clifford Banking Co. v. Donovan Com. Co., 195 Mo. 262, l. c: 288, 94 S. W. 527, that it is unnecessary to attempt to illustrate it by further citations. If the question of the sufficiency of this pleading in the counterclaim was before us on the motion to make more definite or certain, we are not prepared to say that such motion should not have been sustained, but, as before noted, we cannot pass on that point, or motion, by reason of the absence of any motion for a new trial. Clearly and unmistakably the tort is waived and the recovery is sought on this so-called common count for money had and received to the use of defendant.

The questions then recur, whether the averments of the matter pleaded are matters of counterclaim and whether the counterclaim, as these matters are there pleaded, will support the judgment?

It is clear from the statement in the counterclaim that the cause of action set up in this falls within the definition of a counterclaim as contained in section 1807, Revised Statutes 1909. On its face it appears to be a cause of action arising out of the transaction set forth in the petition as the foundation of plaintiff's claim and connected with the subject of the action. The counterclaim charges that the transaction arose on purchases of printing paper by defendant from plaintiff. If we consider it as relating to dealings between the two parties with respect to the purchase and sale of printing paper, that would bring it under the first subdivision of section 1807.

If it be said that it does not appear to be the same sale or the same deal, it surely falls under the second

subdivision as an action arising on contract and existing at the commencement of the action, a right which arose and existed at the time of the commenceent of the action by plaintiff against this defendant. The account is dated December 31, 1907; this action was begun December 14, 1908. It is immaterial that the real cause may have originated in fraud; defendant has waived that, suing on contract. [Barnes v. McMullins, 78 Mo. 260, l. c. 274.] Nor is it material that the real cause set out as a counterclaim should be a liquidated demand. [Green v. Conrad, 114 Mo. 651, l. c. 667, 21 S. W. 839.] While the contract may be a fiction, in fact, it fell in, arose, at the date of the perpetration of the fraud, and existed at the time of the commencement of the action. Considering either of these subdivisions of this section it was a proper matter for counterclaim.

That it states a cause of action must be conceded, if it did no more than set out and charge, as it does, that plaintiff had and received the sums of money mentioned to the use and benefit of defendant. That is all that what are called these common counts require to be set out and if it fulfills the requirements of our statute that the items of account be set out in the pleadings or that a copy of the account be attached to the petition, then it fulfilled the requirements of the statute as to pleading.

Considering the counterclaim and the attached account, as has been held by our Supreme Court, it is a sufficient statement of the ultimate facts relied upon for a recovery. [Meyer v. Chambers, 68 Mo. 626; Clifford Banking Co. v. Donovan Com. Co., supra.] If it is true that this counterclaim is lacking in definiteness, as said in Meyer v. Chambers, supra, the remedy was not by demurrer but by motion to make more definite and certain.

Learned counsel for appellant argue that in the absence of an express warranty, or of an allegation of a trust relation, or special facts or circumstances other

than the mere relation of vendor and vendee, the receipt and use of goods without objection, the payment for same without objection, finally and forever ends the matter; that it is too late, after the goods have been used and paid for, and after it is impossible, by reweighing, to determine what the true weight is, for the transaction to be reopened, that the rule of *caveat emptor* applies, and the conduct of commerce requires, that the rule which prevents endless dispute and litigation should be enforced. We confess our inability to see how plaintiff can avail itself of these defenses under a demurrer to a pleading which charges that plaintiff was liable to defendant by reason of the latter having paid it sundry sums of money, which "sums of money were had and received by said plaintiff to the use of defendant herein."

On consideration of the case we find no reversible error. The judgment of the circuit court is affirmed. *Nortoni* and *Caulfield, JJ.,* concur.