[EDITORS' NOTE: THIS OPINION HAS BEEN WITHDRAWN.]
FILED 126
Honorable Jack Gannon State Senator, District 22 P. O. Box 10 DeSoto, Missouri 63020
Dear Senator Gannon:
This is in response to your request for an official opinion concerning the following:
 "The question concerns whether a school board member who sells tax-sheltered annuity contracts to teachers within the school system is in violation of any of the State laws."
You explain the factual circumstances upon which your question is based in the following manner:
 "Prior to his election to the school board on April 6, 1976, the school board member sold tax-sheltered annuity contracts to several teachers in the system. Payments for these contracts are withheld from the teachers' salaries and paid by the school system directly to the company holding the contract. These contracts continued in effect after the salesman became a member of the school board and he continues to receive commissions from them.
 "Following the April 6 election, an unsuccessful candidate for the Board raised this issue and charged that the elected board member was in conflict of interest. His charge was based on the fact that the payment was made by the school and the salesman (board member) continued to receive commissions."
Your question requires examination of two Missouri statutes. Section 162.391, RSMo Supp. 1975, provides, in part, as follows:
 "No member of any board of education of a six-director district shall hold any office or employment of profit from the board while a member thereof. . . ."
Based on the facts described in your opinion request, the board member does not appear to hold any "office" or "employment" from the board. Therefore, we conclude there is no violation of Section162.391.
It is necessary to examine next Section 105.490, RSMo 1969, which provides as follows:
 "1. No officer or employee of an agency shall transact any business in his official capacity with any business entity of which he is an officer, agent or member or in which he owns a substantial interest; nor shall he make any personal investments in any enterprise which will create a substantial conflict between his private interest and the public interest; nor shall he or any firm or business entity of which he is an officer, agent or member, or the owner of substantial interest, sell any goods or services to any business entity which is licensed by or regulated in any manner by the agency in which the officer or employee serves.
 "2. Any person who violates the provisions of this section shall be adjudged guilty of a misdemeanor, and upon conviction shall be punished by a fine of not more than five hundred dollars or by confinement for not more than one year, or both."
Pursuant to Section 105.450(1), RSMo 1969, a school board is an "agency" and, accordingly, its officers and employees must comply with Section 105.490, RSMo 1969, which prohibits conflicts of interest.
The question to be resolved is whether the board member who is receiving commissions on contracts sold to teachers can be said to be:
 ". . . transact[ing] any business in his official capacity with any business entity of which he is an officer, agent or member or in which he owns a substantial interest; . . ." (Emphasis supplied)
According to the facts you have provided us, the board member, as an individual, contracts directly with a teacher; he does not contract with the school district. Also according to the facts you have provided us, the school board apparently plays no role in and takes no official action with respect to those transactions. Therefore, it does not appear that the board member's sale of tax-sheltered annuity contracts to individual teachers constitutes the transaction of business in his "official capacity."
However, you note that payments for these contracts are withheld by the school district from the teachers' salaries and paid directly to the company holding the contract. From these facts, it appears that the role of the school district is simply that of a conduit and the money involved is that of the teacher, not of the school. No funds of the school district are transmitted to the company and no public funds inure to the benefit of the board member who receives commissions from the sale of tax-sheltered annuities.
The objective of conflict of interest laws has been described as follows:
 ". . . to remove from public officials, so far as possible, all temptation to use that official power, directly or indirectly, to increase the emoluments of such office; and so they are forbidden to become interested in contracts let by them, or to have their salaries increased or decreased, or to accept offices created by themselves." State ex rel. Smith v. Bowman, 170 S.W. 700, 703 (Spr.Ct.App. 1914). See also Witmer v. Nichols, 8 S.W.2d 63 (Mo. 1928); Smith v. Hendricks, 136 S.W.2d 449 (Spr.Ct.App. 1939); and Nodaway County v. Kidder, 129 S.W.2d 857
(Mo. 1939).
The basis for this prohibition is discussed by the Missouri Supreme Court in Witmer v. Nichols, supra, wherein the court stated that a school board member:
 ". . . owed the school district an undivided loyalty in the transaction of its business and in the protection of its interest; this duty he could not properly discharge in a matter in which his own personal interests were involved. . . ." Id. at 65.
Based on the authorities noted above, it is the conclusion of this office that a school board member who sells tax-sheltered annuity contracts to teachers in the manner you have described is not transacting business "in his official capacity" as a member of the board. Although the board member receives commissions on contracts to which teachers in the school district are parties, the financial benefit results from a private transaction between him and a teacher; and based on the facts you have provided us, he cannot be said to profit from his official status.
Further under the statement of facts in your request, we find no violation of the provisions of Section 105.495, RSMo.
Yours very truly,
 JOHN C. DANFORTH Attorney General